# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF LOUISIANA

IN RE: BRAD E. KOUNTZ                    CASE NO. 23-10855
                                                CHAPTER 7

## <u>NOTICE TO INTERESTED PARTIES</u>

Brad E. Kountz
30512 Brent Alan St.
Albany, LA 70711

Samera L. Abide
Trustee
P.O. Box 3616
Baton Rouge, LA 70821

J. David Andress
Attorney at Law
Andress Law Firm, LLC
120 Rue Beauregard, Suite 205
Lafayette, LA 70508

Office of the U.S. Trustee
400 Poydras Street
Suite 2110
New Orleans, LA 70130

NOTICE IS HEREBY GIVEN that a hearing on the Motion for Relief from Automatic Stay filed by SERVICE MAC, LLC AS SERVICER FOR MOVEMENT MORTGAGE, LLC, shall be heard on May 1, 2024, at 2:00 o'clock p.m., at the United States Bankruptcy Court, 707 Florida St, Room 222, Baton Rouge, LA 70801.

The **RESPONSE DEADLINE** to answer, object, or oppose (and file same with respect to) the instant Motion is April 23, 2024.

DEAN MORRIS, L.L.C.
1820 Avenue of America
P. O. Box 15270
Monroe, LA  71207-5270
(318) 388-1440

/S/ Ashley E. Morris
ATTORNEY FOR CREDITOR

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF LOUISIANA

IN RE: BRAD E. KOUNTZ     CASE NO. 23-10855
             CHAPTER 7

## <u>NOTICE TO INTERESTED PARTIES</u>

Brad E. Kountz       Samera L. Abide
30512 Brent Alan St.      Trustee
Albany, LA 70711       P.O. Box 3616
             Baton Rouge, LA 70821

J. David Andress       Office of the U.S. Trustee
Attorney at Law        400 Poydras Street
Andress Law Firm, LLC     Suite 2110
120 Rue Beauregard, Suite 205  New Orleans, LA 70130
Lafayette, LA 70508

   NOTICE IS HEREBY GIVEN that a hearing on the Motion for Relief from Automatic

Stay filed by SERVICE MAC, LLC AS SERVICER FOR MOVEMENT MORTGAGE, LLC, shall

be heard on May 1, 2024, at 2:00 o'clock p.m., at the United States Bankruptcy Court, 707 Florida

St, Room 222, Baton Rouge, LA 70801.

   The **RESPONSE DEADLINE** to answer, object, or oppose (and file same with respect to)

the instant Motion is April 23, 2024.

         DEAN MORRIS, L.L.C.
         1820 Avenue of America
         P. O. Box 15270
         Monroe, LA  71207-5270
         (318) 388-1440

         /S/ Ashley E. Morris
         ATTORNEY FOR CREDITOR

**File a Notice:**

[23-10855 Brad Eugene Kountz](#)

Type: bk                    Chapter: 7 v                    Office: 3 (Baton Rouge)
Assets: y                   Debtor disposition: Standard     Judge: MAC
                           Discharge

Case Flag: FeeDueSTAY,
MEANSNO, RepeatPACER

### U.S. Bankruptcy Court

### Middle District of Louisiana

Notice of Electronic Filing

The following transaction was received from Ashley Morris entered on 4/5/2024 at 12:20 PM CDT and filed on 4/5/2024

**Case Name:**        Brad Eugene Kountz
**Case Number:**      [23-10855](#)
**Document Number:** [25](#)

**Docket Text:**
Notice of Hearing *as to the property located at 30512 Brent Alan St., Albany, LA 70711* Filed by Ashley Morris of c/o Dean Morris, LLC on behalf of Movement Mortgage, LLC as serviced by ServiceMac, LLC RE: related document(s)[24] Motion for Relief From Stay filed by Creditor Movement Mortgage, LLC as serviced by ServiceMac, LLC) Hearing scheduled 5/1/2024 at 02:00 PM at 707 Florida St., Rm. 222. (Morris, Ashley)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**04.05.2024 NOH.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=973335398 [Date=4/5/2024] [FileNumber=7172659-0]
[a51a75ef2e3cc88f3ddd3e8fc62cc0b8a31a8371c781d2ac0ab4bbe669745a610733c
ad4c1202fd53bb7cee79c3ee74be69ff671fa11016d86bec0e5b4c353a0]]

**23-10855 Notice will be electronically mailed to:**

Samera L. Abide
slabide@abide-law.com, SLA@trustesolutions.net;bonda@abide-law.com;paulette@abide-law.com

Samera L. Abide on behalf of Trustee Samera L. Abide
slabide@abide-law.com, SLA@trustesolutions.net;bonda@abide-law.com;paulette@abide-law.com

J. David Andress on behalf of Debtor Brad Eugene Kountz
andresslawfirmnotices@gmail.com, andress.ecf@gmail.com;AndressLawFirmLLC@jubileebk.net

Stacy Grove Butler on behalf of Plaintiffs Neighbors Federal Credit Union
stacy@alexandersides.com

Ashley Morris on behalf of Creditor Movement Mortgage, LLC as serviced by ServiceMac, LLC
amorris@creditorlawyers.com, sbailey@creditorlawyers.com

U.S. Trustee

ustp.region05@usdoj.gov

**23-10855 Notice will not be electronically mailed to:**

**File a Motion:**

[23-10855 Brad Eugene Kountz](#)

| | | |
|---|---|---|
| Type: bk | Chapter: 7 v | Office: 3 (Baton Rouge) |
| Assets: y | Debtor disposition: Standard Discharge | Judge: MAC |

Case Flag: MEANSNO, RepeatPACER

### U.S. Bankruptcy Court

### Middle District of Louisiana

Notice of Electronic Filing

The following transaction was received from Ashley Morris entered on 4/5/2024 at 12:12 PM CDT and filed on 4/5/2024

**Case Name:**       Brad Eugene Kountz
**Case Number:**    [23-10855](#)
**Document Number:** [24](#)

**Docket Text:**
Motion for Relief from Stay *as to the property located at 30512 Brent Alan St., Albany, LA 70711*. Fee Amount $199, Filed by Ashley Morris of c/o Dean Morris, LLC on behalf of Movement Mortgage, LLC as serviced by ServiceMac, LLC. (Attachments: # (1) Exhibit Executed Affidavit # (2) Exhibit Loan Docs) (Morris, Ashley)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**04.05.2024 MFR (for filing).pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=973335398 [Date=4/5/2024] [FileNumber=7172656-0]
[767580f9c65ed08d98838883b4fb2d19f7229d22b82f593597c66fd7bd3b25c7ce08d
40ce9f6207b631c4424e37dc0a50590048bfb639eefe62da69d3e69fb9f]]
**Document description:**Exhibit Executed Affidavit
**Original filename:**C:\fakepath\04.05.2024 EXECUTED AFFIDAVIT (for filing).pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=973335398 [Date=4/5/2024] [FileNumber=7172656-1]
[16e196c1602b507cd11c3fe31754ec491a65832e94fe416f124c9ca13e4e838b66999
87b09382619b6ab06b23d6a7a113cc0eef106df3368e0d4fe6c5f1981a8]]
**Document description:**Exhibit Loan Docs
**Original filename:**C:\fakepath\04.05.2024 LOAN DOCS (for filing).pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=973335398 [Date=4/5/2024] [FileNumber=7172656-2]
[c7bb6f341e038d306a75cb8f610f563f4bf2109b47e470f53c739df36518278fa7ea4
1ca2c0cd419a01765cfff0ccc2dc96bb9813d922e013f10f912a579687b]]

**23-10855 Notice will be electronically mailed to:**

Samera L. Abide
slabide@abide-law.com, SLA@trustesolutions.net;bonda@abide-law.com;paulette@abide-law.com

Samera L. Abide on behalf of Trustee Samera L. Abide
slabide@abide-law.com, SLA@trustesolutions.net;bonda@abide-law.com;paulette@abide-law.com

J. David Andress on behalf of Debtor Brad Eugene Kountz
andresslawfirmnotices@gmail.com, andress.ecf@gmail.com;AndressLawFirmLLC@jubileebk.net

Stacy Grove Butler on behalf of Plaintiffs Neighbors Federal Credit Union
stacy@alexandersides.com

Ashley Morris on behalf of Creditor Movement Mortgage, LLC as serviced by ServiceMac, LLC
amorris@creditorlawyers.com, sbailey@creditorlawyers.com

U.S. Trustee
ustp.region05@usdoj.gov

**23-10855 Notice will not be electronically mailed to:**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF LOUISIANA**

IN RE: BRAD E. KOUNTZ

CASE NO. 23-10855
CHAPTER 7

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

The motion of SERVICE MAC, LLC AS SERVICER FOR MOVEMENT MORTGAGE, LLC ("Mover"), a secured creditor, respectfully represents:

1.

The Debtor in the above entitled and numbered case filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code on December 12, 2023.

2.

This Honorable Court has jurisdiction over this matter pursuant to the provisions of <u>inter alia</u> 11 U.S.C. 362 and 28 U.S.C. 157 and 1334.

3.

Mover is the entity entitled to enforce a note in the original principal amount of $232,707.00, dated October 8, 2021, executed by Brad Eugene Kountz and secured by a mortgage, executed by Brad Eugene Kountz and Brittany Kountz, recorded at Instrument No. 1018530, Book 3132, Page 39, in the records of Livingston Parish, Louisiana, affecting the following described property located in Albany, Louisiana:

THAT CERTAIN LOT OR PORTION OF GROUND, together with all of the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in Section 23, Township 6 South, Range 6 East, Parish of Livingston, State of Louisiana, in that subdivision known as, MEADOW CIRCLE, PHASE II, and being more particularly described and designated as follows, to wit:

TRACT "A", MEADOW CIRCLE SUBDIVISION, PHASE II, all in accordance with the official subdivision map, prepared by Louis Lyles Budden, Professional Land Surveyor, dated May 1, 2001, and recorded at Plat Book 44, Page 344, under File No. 472283, and further in accordance with a survey, prepared by John D. Adams, R.P.L.S., dated November 28, 2005, and recorded at Plat Book 54, Page 352, under File No. 594341, all of the official records of Livingston Parish, Louisiana. Said subdivision and said lot having such measurements and dimensions and being subject to such restrictions and servitudes as shown on the official subdivision map and above referenced survey.

bearing the municipal address of 30512 Brent Alan St, Albany, LA 70711.

5.

The Debtor is in default on the obligations under the Note and Mortgage to Mover. The Debtor is delinquent for the months of January 01, 2024 through date on the direct monthly mortgage payments of $1,558.10 each, for a total amount of $4,674.30.

6.

The estimated payoff of the subject loan as of March 12, 2024 is $225,296.62, not including attorney's fees and costs associated with this motion.

7.

The value of the property as reflected by the Debtor Schedules, and to which Creditor stipulates for purposes of this motion only, is approximately $265,000.00. After the debtor's homestead exemption and the costs associated with the selling of said property, there is no equity in the property for the benefit of unsecured creditors.

8.

There is no equity in the property.  Mover is not adequately protected. The property is not necessary for an effective reorganization. Thus, this Court should terminate the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2).

9.

For the foregoing reasons, Mover requests that the automatic stay in this case be lifted insofar as the property described in Paragraph (3) hereof is affected thereby.

WHEREFORE, MOVER PRAYS that after all delays have elapsed and proceedings are had, this Honorable Court enter an order terminating the automatic stay provided for by 11 U.S.C. 362(a) as to the estate of the Debtor so to allow Mover to enforce any and all rights it has in respect to the property described in Paragraph (3) herein via state court foreclosure proceedings or otherwise.

DEAN MORRIS, L.L.C.
1820 Avenue of America
P. O. Box 15270
Monroe, LA 71207-5270
(318) 388-1440

/S/ Ashley E. Morris
ATTORNEY FOR CREDITOR

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF LOUISIANA**

IN RE: BRAD E. KOUNTZ

CASE NO. 23-10855
CHAPTER 7

**AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**

BEFORE ME, a Notary Public, came and appeared, MOVEMENT MORTGAGE, LLC

BY SERVICEMAC, LLC, ITS APPOINTED ATTORNEY IN FACT through its duly authorized

representative, __Ken Luckadoo__ , ("Affiant") who, after being duly sworn by me
Default Administration Manager II

Notary, declared as follows:

    1.    My name is __Ken Luckadoo__ and I am a __Manager II__ for ServiceMac,
Default Administration

LLC. ServiceMac, LLC is the authorized servicer for Movement Mortgage, LLC. In that capacity

I am familiar with a mortgage loan of Brad E. Kountz ("Debtor"), which is the subject of the

motion for relief from automatic stay ("Mortgage Loan").

    2.    I have thoroughly reviewed and I am personally familiar with the Mortgage Loan

and the records and data compilations pertaining thereto, which business records reflect acts,

events or conditions made at or near the time by, or from information transmitted by, a person with

knowledge thereof and which records and data compilations are made and kept as a regular practice

of the regularly conducted business activities of ServiceMac, LLC.

    3.    Movement Mortgage, LLC is the party entitled to enforce a note dated October 8,

2021, signed by Brad Eugene Kountz payable to Movement Mortgage, LLC, on the note in the

amount of $232,707.00, bearing an interest at the rate of 3.250%.

4.    Movement Mortgage, LLC, directly or through an agent, has possession of the note.

_____Fort Mill_____ (City), _____South Carolina_____ (State), this _4th_ day of _April_ , 2024.


WITNESSES:                          MOVEMENT    MORTGAGE,    LLC    BY
                                    SERVICEMAC,   LLC,   ITS   APPOINTED
_Teresa K Hafa_____         ATTORNEY IN FACT

_Sam Lotos_____          BY: _____

    SWORN TO AND SUBSCRIBED before me, the undersigned Notary Public, on this

_4th_ day of __April_____ , 2024.

_____
        NOTARY PUBLIC

# NOTE



FHA Case No.

KOUNTZ
Loan #
Serv. #
MIN

OCTOBER 8, 2021          HAMMOND,                    LOUISIANA
        [Date]                      [City]                    [State]

30512 BRENT ALAN ST., ALBANY, LA 70711
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $232,707.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is **MOVEMENT MORTGAGE, LLC.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

–     Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.250%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1ST** day of each month beginning on **DECEMBER 1, 2021**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on **NOVEMBER 1, 2051**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **109 EAST CHARLES STREET, HAMMOND, LA 70401** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$1,012.76**.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

EX   36.89                          Page 1 of 3                      FHA Louisiana Fixed Rate Note - 03/16



If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____

— BORROWER — BRAD EUGENE KOUNTZ

[Sign Original Only]

'NE VARIETUR' for identification with an Act of Mortgage passed before me this ___8th___ day of ___October 2021___

_____

Notary Public:
Notary ID #:
My Commission Expires: _at death_

MICHAEL M. ST. ROMAIN
Notary Public
State of Louisiana
Statewide Jurisdiction
Notary ID #
My Commission is for Life

Individual Loan Originator: **RICK SEDBERRY**, NMLSR ID:
Loan Originator Organization: **MOVEMENT MORTGAGE, LLC**, NMLSR ID:

# Livingston Parish Recording Page

**Jason B. Harris**
**Clerk of Court**
PO Box 1150
Livingston, LA 70754-1150
(225) 686-2216

---

**Received From :**
　SIMPLIFILE

**First MORTGAGOR**

| KOUNTZ, BRAD EUGENE |
|---|

**First MORTGAGEE**

| MOVEMENT MORTGAGE LLC |
|---|

---

**Index Type :**　　Mortgages　　　　　　　　　　　**File Number :** 1018530

**Type of Document :** Mortgage

　　　　　　　　　　　　　　　　　　　　　　　**Book :** 3132　　　　**Page :**　39

　　**Recording Pages :**　　　　　20

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court' s office for Livingston Parish, Louisiana.

　On (Recorded Date) : 10/12/2021

　At (Recorded Time) : 8:34:27AM

　　　　　　　　　　　　　　　　　　　　　　　Clerk of Court

**Return To :**　　SIMPLIFILE

Do not Detach this Recording Page from Original Document

Prepared By:
KAREN HOFFMAN
MOVEMENT MORTGAGE, LLC
8024 CALVIN HALL ROAD
INDIAN LAND, SC 29707
888-589-4416

After Recording Return To:
MOVEMENT MORTGAGE, LLC
8024 CALVIN HALL RD
INDIAN LAND, SC 29707

[Space Above This Line For Recording Data]

## MORTGAGE

KOUNTZ
Loan #: ███████
Serv. #: ███████
MIN: ███████
MERS Phone: 1-888-679-6377
PIN: ███████
Case #: ███████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **OCTOBER 8, 2021**, together with all Riders to this document.

**(B) "Borrower"** is **BRAD EUGENE KOUNTZ AND BRITTANY KOUNTZ, HUSBAND AND WIFE.** Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is **MOVEMENT MORTGAGE, LLC.** Lender is a **LLC** organized and existing under the laws of **DELAWARE.** Lender's address is **8024 CALVIN HALL ROAD INDIAN LAND, SC 29707.**

**(E) "Note"** means the promissory note signed by Borrower and dated **OCTOBER 8, 2021.** The Note states that Borrower owes Lender **TWO HUNDRED THIRTY-TWO THOUSAND SEVEN HUNDRED**

**FHA Louisiana Mortgage - 11/18**

EX 19376.29                                   Page 1 of 16



**SEVEN AND 00/100** Dollars (U.S. $232,707.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **NOVEMBER 1, 2051.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. All Riders to this Security Instrument are deemed to be a part of this Security Instrument as if fully incorporated herein. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider          ☐ Planned Unit Development Rider

☒ Other(s) [specify] **LOUISIANA TITLE INSURANCE RIDER**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

FHA Louisiana Mortgage - 11/18

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the Parish of **LIVINGSTON**:
**SEE EXHIBIT A LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**
which currently has the address of **30512 BRENT ALAN ST., ALBANY, LA 70711** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14.

**FHA Louisiana Mortgage - 11/18**

Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and

**FHA Louisiana Mortgage - 11/18**

in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan.

FHA Louisiana Mortgage - 11/18

Page 5 of 16

The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section

**FHA Louisiana Mortgage - 11/18**

22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which

FHA Louisiana Mortgage - 11/18



Page 7 of 16

has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the

FHA Louisiana Mortgage - 11/18

amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**FHA Louisiana Mortgage - 11/18**



Page 9 of 16

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17,

FHA Louisiana Mortgage - 11/18

Page 10 of 16

"Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**FHA Louisiana Mortgage - 11/18**

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Notice of Default; Right to Cure. Lender** shall give notice to Borrower prior

FHA Louisiana Mortgage - 11/18

to acceleration following Borrower's failure to pay principal, interest, and other fees and charges as provided in the Note, or following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure as available under Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may accelerate and require immediate payment in full of all sums secured by this Security Instrument without further demand for payment.

**23. Foreclosure.** Following Lender's acceleration of payment, Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with Applicable Law. For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys' fees and other fees and charges. To the extent permitted by Applicable Law, Borrower waives: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sales; (b) the three days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (c) all other benefits provided under all other articles not specifically mentioned above. Borrower agrees that any declaration of fact made by an authentic act before a notary public and two witnesses by a person declaring such facts to be within his or her knowledge, will constitute authentic evidence of such facts for purposes of foreclosure under Applicable Law, including but not limited to La. R.S. § 9:3504(D)(6) and La. R.S. § 9:5555.

**24. Cumulative Remedies.** Lender shall have such additional default remedies as may be available under then Applicable Law. All of Lender's remedies shall be cumulative, and nothing under this Security Instrument shall limit or restrict the remedies available to Lender following default.

**25. Keeper.** Should the Property be seized as an incident to an action for recognition or enforcement of this Security Instrument by executory process, sequestration, attachment, writ of *fieri facias*, or otherwise, Borrower agrees that the court issuing such an order shall, if requested by Lender, appoint Lender, or any person or entity designated by Lender, as keeper of the Property as provided in La. R.S. §§ 9:5136, *et. seq.* Borrower agrees to pay the reasonable fees of such a keeper, which fees shall be secured by this Security Instrument as an additional expense.

**26. Cancellation.** This Security Instrument shall remain in effect until canceled from the public records. Following the full payment and satisfaction of all sums secured by the Security Instrument, Borrower may request in writing that Lender provide Borrower with the original paraphed Note marked "paid in full", or with an appropriate mortgage cancellation certificate, for submission to the Clerk of Court or Recorder of Mortgages for the parish in which the Property is located for the purpose of canceling this Security Instrument. Lender may delay providing Borrower with the canceled Note or with a mortgage cancellation certificate for up to 60 days following Lender's receipt of Borrower's request. Unless Lender agrees to cancel this Security Instrument from the public records, Borrower shall be responsible for doing so. Borrower shall pay all cancellation costs.

**27. Waiver of Homestead Rights.** Borrower (and Borrower's spouse to the extent applicable) waive

FHA Louisiana Mortgage - 11/18

Page 13 of 16

any homestead rights and other exemptions from seizure with respect to the Property as may be provided under Applicable Law.

**28. Savings and Loan Association.** If Lender is a savings and loan association or thrift institution, the Note and all sums secured by this Security Instrument shall have the benefits of La. R.S. § 6:830.

**29. Future Advances.** Lender may, but shall not be required to, make advances to protect the security of this Security Instrument pursuant to Section 9. At no time shall the principal amount of the indebtedness secured by this Security Instrument, including advances made pursuant to Section 9, exceed 150% of the original amount of the indebtedness set forth in the Note.

**30. Late Charges.** Should Borrower fail to pay any installment of principal and interest under the Note within 15 days of when due, Borrower agrees to pay Lender a late charge in an amount equal to 4.000%.

**31. Marital Status.** Borrower's marital status is:
BRAD EUGENE KOUNTZ, married to BRITTANY KOUNTZ
BRITTANY KOUNTZ,

**32. Additional Defined Terms.** As used in this Security Instrument, "Lender" additionally includes any successors and assigns of the Lender first named above, as well as any subsequent holder or holders of the Note, or of any indebtedness secured by this Security Instrument.

As used in this Security Instrument, "Note" additionally includes any substitute note or notes issued in replacement of Note first described above. It is Borrower's intent that this Security Instrument secure all renewals, extensions, refinancings, and modifications of the Note, to the extent provided by La. R.S. § 9:5390.

As used in this Security Instrument, "Lien" also means a privilege, mortgage, security instrument, assignment or other encumbrance. "Real Property" means "immovable property" as that term is used in the Louisiana Civil Code. "Condemnation" includes "expropriation" as that term is used in Louisiana law.

**33. Property Includes Servitudes and Component Parts.** The Property subject to this Security Instrument additionally includes servitudes and component parts now or hereafter attached to or incorporated into the Property.

**34. Full Ownership.** Borrower represents and warrants that Borrower is the full and lawful owner of the Property or, if the Property is on a leasehold interest, that Borrower is the full owner of the lease or leasehold interest. If the Security Interest is on a lease or leasehold interest, and if Borrower subsequently acquires ownership of the Property, then, to the maximum extent permitted by Applicable Law (a) Borrower's leasehold and ownership interests in the Property shall not merge unless Lender agrees to the merge in writing, and (b) this Security Instrument shall encumber the ownership interest in the immovable property described in the lease or leasehold interest.

**35. Modification of Section 12 of this Security Instrument.** Section 12 of this Security Instrument is hereby modified to the following extent.

Each Borrower covenants and agrees that Borrower's obligations and liabilities under this Security Instrument and under the Note shall be joint, several and solidary with all other Borrowers and with each guarantor of the Note (if applicable). However, to the extent that the Property is community-owned immovable (real) property, and Borrower's spouse co-signs this Security Instrument, but does not co-sign the Note, Borrower's spouse is co-signing this Security Instrument for purpose of: (a) concurring with the granting of this Security Instrument on the community-owned Property (to the extent required under Civil Code Article 2347), without obligating the separate property of Borrower's spouse; and (b) waiving any

FHA Louisiana Mortgage - 11/18

Page 14 of 16

homestead rights to which Borrower's spouse may be entitled under Applicable Law. Notwithstanding the fact that Borrower's spouse did not co-sign the Note, and further notwithstanding the language of Section 12 of this Security Instrument, Borrower's spouse is obligated for payment of the Note and all other sums secured by this Security Instrument to the extent of the spouse's community property interest, and to the extent that the Note is a community obligation.

**36. Additional Waivers.** Borrower hereby waives production of mortgage, conveyance and other certificates with respect to the Property, and relieves and releases the Notary Public before whom this Security Instrument was passed from all responsibility and liability in connection therewith.

THUS DONE, AND PASSED, on this _8th_ day of _October 2021_ , in the presence of the undersigned Notary Public, and in the presence of the undersigned competent witnesses, who hereinto sign their names, along with Borrower, after being duly sworn and after reading of the whole.

_[signature]_

- BORROWER - BRAD EUGENE KOUNTZ

_[signature]_

BRITTANY KOUNTZ

WITNESS(ES) (as to all signatures):

_[signature]_

Print Name _KELSEY FLOYD_        Print Name _Hannah Adams_

NOTARY PUBLIC:

_[signature]_

Print Name

MICHAEL M. ST ROMAIN
Notary Public
State of Louisiana
Statewide Ju...
Notary ID N...
My Commission is for...

FHA Louisiana Mortgage - 11/18

Page 15 of 16

[Space Below This Line For Acknowledgment]

STATE OF ___Louisiana___

PARISH OF ___Tangipahoa___

On this ___8th___ day of ___October 2021___, before me personally appeared

_____

to me known to be the person {or persons) described in and who executed the foregoing instrument, and acknowledged that he (or they) executed it as his (or their) free act and deed.

MICHAEL M. ST. ROMAIN
Notary Public
State of Louisiana
Statewide Jurisdiction
Notary ID #
My Commission is for Life

_____
Printed Name:

_____
Identification Number
Notary Public qualified in _____ Parish,
State of Louisiana
My Commission Expires: _at death_

Individual Loan Originator: **RICK SEDBERRY**, NMLSR ID:
Loan Originator Organization: **MOVEMENT MORTGAGE, LLC**, NMLSR ID:

FHA Louisiana Mortgage - 11/18

Page 16 of 16

## LOUISIANA TITLE INSURANCE RIDER

KOUNTZ

| | |
|---|---|
| Loan #: | ███████████ |
| Serv. #: | ███████████ |
| MIN: | ███████████████ |

THIS LOUISIANA TITLE INSURANCE RIDER is made this **8TH** day of **OCTOBER, 2021**, and is incorporated into and shall be deemed to amend and supplement your Mortgage of the same date given by you to secure your Note to **MOVEMENT MORTGAGE, LLC** of the same date and covering the Property described in your Mortgage (the "Property"), which is located at:

**30512 BRENT ALAN ST., ALBANY, LA 70711**
[Property Address]

In conjunction with your mortgage on real property, a title insurance policy is being issued to insure against potential deficiencies in the title to such real property. This Rider is provided to inform you of the following information:

The name of the issuing title insurance producer is **FLEUR DE LIS TITLE CO.**, whose address is , **HAMMOND, LA**. The Louisiana license number of this producer is # ███████████.

The name of the title insurance underwriter issuing the policy is _First American Title_.

The name of the attorney licensed to practice law in Louisiana, who provided the title opinion upon which the title insurance policy is based, is _Jeff A. Lejaichevre_, whose bar roll number is ___████████___.

**La. Rev. Stat. Ann. §22:513.1**

BY SIGNING BELOW, Borrower accepts and agrees to the inclusion and incorporation of this Louisiana Title Insurance Rider into the aforementioned Mortgage.

- BORROWER - BRAD EUGENE KOUNTZ

BRITTANY KOUNTZ

## EXHIBIT "A"

**Brad E. Kountz,** who declared that he is married to Brittany Kountz, purchasing separate property, using his separate and paraphernal funds to purchase said property, to be under their separate and paraphernal administration and control, resident(s) of 30128 Julia Street, Albany, LA 70711.

**Brittany Kountz,** appearing herein to acknowledge that Brad E. Kountz is purchasing separate property.

## LEGAL DESCRIPTION

THAT CERTAIN LOT OR PORTION OF GROUND, together with all of the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in Section 23, Township 6 South, Range 6 East, Parish of Livingston, State of Louisiana, in that subdivision known as, MEADOW CIRCLE, PHASE II, and being more particularly described and designated as follows, to wit:

TRACT "A", MEADOW CIRCLE SUBDIVISION, PHASE II, all in accordance with the official subdivision map, prepared by Louis Lyles Budden, Professional Land Surveyor, dated May 1, 2001, and recorded at Plat Book 44, Page 344, under File No. 472283, and further in accordance with a survey, prepared by John D. Adams, R.P.L.S., dated November 28, 2005, and recorded at Plat Book 54, Page 352, under File No. 594341, all of the official records of Livingston Parish, Louisiana. Said subdivision and said lot having such measurements and dimensions and being subject to such restrictions and servitudes as shown on the official subdivision map and above referenced survey.

THIS ACT IS MADE, EXECUTED, AND ACCEPTED SUBJECT TO THE FOLLOWING:

Declaration of Covenants and Restrictions for Meadow Circle Subdivision, recorded at COB 722, Page 861, as amended, corrected and/or supplemented, and recorded at COB 730, Page 421, COB 744, Page 145, COB 787, Page 328, COB 789, Page 161, COB 871, Page 814, and all subsequent revisions thereafter; and further subject to all such dedications, restrictions, covenants, easements, rights-of-ways, servitudes, reservations, set-back lines, encroachments, overlaps, and to all other matters which might appear on the official subdivision map or a current and accurate survey of the property, and any rights appearing of record in the office of the Clerk and Recorder for the Parish of Livingston, State of Louisiana.

Brad E. Kountz

Brittany Kountz

# Livingston Parish Recording Page

**Jason B. Harris**
**Clerk of Court**
PO Box 1150
Livingston, LA 70754-1150
(225) 686-2216

**Received From :**
SIMPLIFILE

**First MORTGAGOR**

KOUNTZ, BRAD EUGENE

**First MORTGAGEE**

TO THE PUBLIC

| | | | |
|---|---|---|---|
| **Index Type :** | Mortgages | **File Number :** 1057011 | |
| **Type of Document :** Correction | | | |
| | | **Book :** 3298 | **Page :** 911 |
| **Recording Pages :** | 3 | | |

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Livingston Parish, Louisiana.

On (Recorded Date) : 01/20/2023

At (Recorded Time) : 10:48:27AM

_____
Clerk of Court

**Return To :**   SIMPLIFILE

Do not Detach this Recording Page from Original Document.

## ACT OF DEPOSIT AND CORRECTION

STATE OF LOUISIANA

PARISH OF TANGIAPAHOA

**BE IT KNOWN** that on this 19th day of January, 2023, before me, a Notary Public, duly commissioned and qualified in and for the State of Louisiana, Parish of Tangipahoa, and in the presence of the undersigned competent witnesses, personally came and appeared:

**Jeff A. LeSaicherre,**

Appearer declared that he is the Notary in possession of the records of notary, Michael St. Romain, who was the notary in connection with a Mortgage dated 10/08/2021, executed by Brad Eugene Kountz and Brittany Kountz, recorded at Mortgage Office Instrument No. 1018530 of the official records of Livingston Parish, State of Louisiana.

Appearer further declares that an error was committed in that the borrower's names were was inadvertently not included on page 16 of the mortgage. Appearer declares that he wishes to deposit said completed page 16 of the mortgage and requests that the Clerk of Court in and for the Parish of Livingston, State of Louisiana, make said corrected page 16 a part of his/her Mortgage records and to make mention of the Act of Deposit & Correction in the margin of his/her records at Mortgage Office Instrument No. 1018530 to serve as occasion may require.

**THUS DONE AND PASSED** before me, and the undersigned competent witnesses on the date above mentioned in Hammond, Louisiana.

WITNESSES:

_____

Print Name: _Hedi Alcorn_

_____
Jeff A. LeSaicherre

_____

Print Name: _Peyton LeSaicherre_

_____
NOTARY PUBLIC

[Space Below This Line For Acknowledgment]

STATE OF _Louisiana_

PARISH OF _Tangipahoa_

On this _9th_ day of _October 2021_, before me personally appeared

_Brad Eugene Kountz & Brittany Kountz_

to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he (or they) executed it as his (or their) free act and deed.

MICHAEL M. ST. ROMAIN
Notary Public
State of Louisiana
Statewide Jurisdiction
Notary ID #█████
My Commission is for Life

Printed Name: _____

_____
Identification Number
Notary Public qualified in _____ Parish,
State of Louisiana

My Commission Expires: _at death_

Individual Loan Originator: **RICK SEDBERRY**, NMLSR ID █████
Loan Originator Organization: **MOVEMENT MORTGAGE, LLC**, NMLSR ID █████

**FHA Louisiana Mortgage - 11/18**
█████                                       Page 16 of 16

# Livingston Parish Recording Page

**Jason B. Harris**
**Clerk of Court**
PO Box 1150
Livingston, LA  70754-1150
(225) 686-2216

**Received From :**
   SIMPLIFILE

**First MORTGAGOR**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC

**First MORTGAGEE**

MOVEMENT MORTGAGE LLC

**Index Type :**   Mortgages                          **File Number :** 1057615

**Type of Document :** Assignment

                                                       **Book :** 3301          **Page :**  572

   **Recording Pages :**                2

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court' s office for Livingston Parish, Louisiana.

On (Recorded Date) : 01/31/2023

At (Recorded Time) :  2:11:40PM

_____
Clerk of Court

**Return To :**    SIMPLIFILE

Do not Detach this Recording Page from Original Document

# ASSIGNMENT OF MORTGAGE

**LOUISIANA**

PARISH OF **LIVINGSTON**

WHEN RECORDED MAIL TO: FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402. PH 208-528-9895

FOR VALUE RECEIVED, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR MOVEMENT MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS**, located at **P.O. BOX 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby grant, assign, and transfer to **MOVEMENT MORTGAGE, LLC**, located at **8024 CALVIN HALL ROAD, INDIAN LAND, SC 29707**, Assignee, its successors and assigns, all Assignor's interest under that certain Mortgage dated **OCTOBER 08, 2021**, in the amount of **$232,707.00**, executed by **BRAD EUGENE KOUNTZ AND BRITTANY KOUNTZ, HUSBAND AND WIFE**, Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR MOVEMENT MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS**. Original Mortgagee, and recorded on **OCTOBER 12, 2021** as Original/MOB 3132 Bundle/Page 39 as Entry No./Instrument No. **1018530** of the official records in the Recorder's Office of **LIVINGSTON** Parish, State of **LOUISIANA**.

**AS DESCRIBED IN SAID DEED OF TRUST**

TOGETHER WITH all rights accrued or to accrue under said Mortgage.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **JANUARY 26, 2023**. **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR MOVEMENT MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS**

REBECCA HIGLEY, VICE PRESIDENT

**JEFFREY OSGOOD**, Witness

**ADDISON RICE**, Witness

STATE OF **IDAHO**          COUNTY OF **BONNEVILLE**      ) ss.

On **JANUARY 26, 2023**, before me, **KATIE OLSON**, personally appeared **REBECCA HIGLEY** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR MOVEMENT MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same

**KATIE OLSON (COMMISSION EXP. 02/26/2027)**
NOTARY PUBLIC

> KATIE OLSON
> Notary Public - State of Idaho
> Commission Number 20210709
> My Commission Expires Feb 26, 2027

Page 1 of 1

**MERS PHONE: 1-888-679-6377**

**Fill in this information to identify your case and this filing:**

| Debtor 1 | **Brad** First Name | **Eugene** Middle Name | **Kountz** Last Name |
|---|---|---|---|
| Debtor 2 (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: _____**Middle**_____ District of _____**Louisiana**_____

Case number _____**23-10855**_____

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property                                           12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

| | | **What is the property?** Check all that apply. | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|

1.1  **30512 Brent Alan St.**
Street address, if available, or other description

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Albany, LA 70711**
City        State        ZIP Code

**Livingston**
County

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$265,000.00** | **$265,000.00** |

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Homestead**

☐ **Check if this is community property** (see instructions)

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here ................................................ →

| **$265,000.00** |
|---|

## Part 2:  Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
☑ Yes

Debtor __Kountz, Brad Eugene__                                    Case number *(if known)* __23-10855__

| 3.1 | Make: | Honda | **Who has an interest in the property?** Check one. | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

3.1  Make: __Honda__

Model: __Rancher ATV__

Year: __2020__

Approximate mileage: _____

Other information:

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?  **$3,500.00**

Current value of the portion you own?  **$3,500.00**

If you own or have more than one, describe here:

3.2  Make: __Nissan__

Model: __Armada__

Year: __2019__

Approximate mileage: __72000__

Other information:
| vehicle has been repossessed by creditor |

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?  **$20,909.00**

Current value of the portion you own?  **$20,909.00**

4.  **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
☑ Yes

4.1  Make: __Mahindra__

Model: __Tractor__

Year: __2020__

Other information:

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?  **$15,000.00**

Current value of the portion you own?  **$15,000.00**

5.  **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ....................................................................................➔  **$39,409.00**

| **Part 3:** | **Describe Your Personal and Household Items** |
|---|---|

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

6.  **Household goods and furnishings**

*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No
☑ Yes. Describe. .........

| refrigerator, stove, washer, dryer, table, chairs, desk, beds, tools, dishwasher, kitchen appliances, dishes, silverware, pots, pans |

**$3,000.00**

---

7. **Electronics**

*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No
☑ Yes. Describe. .........

| 4 tvs, cell phones | $200.00 |

8. **Collectibles of value**

*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☑ No
☐ Yes. Describe. .........

9. **Equipment for sports and hobbies**

*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☑ No
☐ Yes. Describe. .........

10. **Firearms**

*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☑ No
☐ Yes. Describe. .........

11. **Clothes**

*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No
☑ Yes. Describe. .........

| personal clothing, shoes and accessories | $500.00 |

12. **Jewelry**

*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No
☑ Yes. Describe. .........

| costume jewelry<br><br>wedding rings | $2,040.00 |

13. **Non-farm animals**

*Examples:* Dogs, cats, birds, horses

☑ No
☐ Yes. Describe. .........

14. **Any other personal and household items you did not already list, including any health aids you did not list**

☑ No
☐ Yes. Give specific information. .............

---

Debtor **Kountz, Brad Eugene**                     Case number (if known) **23-10855**

---

| 15. | Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ....................................................................................................... → | **$5,740.00** |
|---|---|---|

---

## Part 4: Describe Your Financial Assets

Do you own or have any legal or equitable interest in any of the following?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**16. Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☑ Yes ................................................................................................................................ Cash: ..................                **$25.00**

**17. Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes ..................                     Institution name:

|  |  |  |
|---|---|---|
| 17.1. Checking account: | **Regions Bank** ███ | unknown |
| 17.2. Savings account: | **Regions Bank** ███ | unknown |

**18. Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes .....................             Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No
☐ Yes. Give specific information about them.....................             Name of entity:                     % of ownership:

---

Debtor **Kountz, Brad Eugene**                                    Case number *(if known)* **23-10855**

---

20.   **Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No

☐ Yes. Give specific
information about
them.....................        Issuer name:

_____     _____

_____     _____

21.   **Retirement or pension accounts**

*Examples:*  Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No

☐ Yes. List each          Type of account:      Institution name:
account separately.

401(k) or similar plan:   _____     _____

Pension plan:             _____     _____

IRA:                      _____     _____

Retirement account:       _____     _____

Keogh:                    _____     _____

Additional account:       _____     _____

Additional account:       _____     _____

22.   **Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:*  Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or
others

☐ No

☑ Yes .....................             Institution name or individual:

Other:      **electric, gas, water**                                    _____ $250.00

23.   **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No

☐ Yes .....................    Issuer name and description:

_____     _____

_____     _____

_____     _____

---

Debtor **Kountz, Brad Eugene**                                      Case number *(if known)* **23-10855**

---

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No

☐ Yes .....................   Institution name and description. Separately file the records of any interests. 11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No

☐ Yes. Give specific information about them. ...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No

☐ Yes. Give specific information about them. ...

27. **Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No

☐ Yes. Give specific information about them. ...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**

☐ No

☑ Yes. Give specific information about them, including whether you already filed the returns and the tax years. ...................

earned income credit and additional child tax credit

Federal: _____ **unknown**
State: _____
Local: _____

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No

☐ Yes. Give specific information. ........

Alimony: _____
Maintenance: _____
Support: _____
Divorce settlement: _____
Property settlement: _____

---

Debtor __Kountz, Brad Eugene__                                          Case number *(if known)* __23-10855__

---

30.  **Other amounts someone owes you**

    *Examples:*  Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

    ☐ No

    ☑ Yes. Give specific information. ........ | disposable earnings |     **unknown**

31.  **Interests in insurance policies**

    *Examples:*  Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

    ☑ No

    ☐ Yes. Name the insurance company of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| | | |
| | | |
| | | |

32.  **Any interest in property that is due you from someone who has died**

    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

    ☑ No

    ☐ Yes. Give specific information. ........

33.  **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

    *Examples:*  Accidents, employment disputes, insurance claims, or rights to sue

    ☑ No

    ☐ Yes. Describe each claim. ..............

34.  **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

    ☑ No

    ☐ Yes. Describe each claim. ..............

35.  **Any financial assets you did not already list**

    ☑ No

    ☐ Yes. Give specific information. ........

36.  **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** ...................................................................................................... ➔ | **$275.00**

---

**Part 5:**    **Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

37.  **Do you own or have any legal or equitable interest in any business-related property?**

    ☑ No. Go to Part 6.

    ☐ Yes. Go to line 38.

---

Debtor  **Kountz, Brad Eugene**  Case number *(if known)* **23-10855**

| | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**38.**  **Accounts receivable or commissions you already earned**

☑ No

☐ Yes. Describe. .........

_____

**39.**  **Office equipment, furnishings, and supplies**

*Examples:*  Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☑ No

☐ Yes. Describe. .........

_____

**40.**  **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☑ No

☐ Yes. Describe. .........

_____

**41.**  **Inventory**

☑ No

☐ Yes. Describe. .........

_____

**42.**  **Interests in partnerships or joint ventures**

☑ No

☐ Yes. Describe .......

Name of entity:                     % of ownership:

_____     _____     _____

_____     _____     _____

_____     _____     _____

**43.**  **Customer lists, mailing lists, or other compilations**

☑ No

☐ Yes. **Do your lists include personally identifiable information** (as defined in 11 U.S.C. § 101(41A))?

☐ No

☐ Yes. Describe. .........

_____

Debtor **Kountz, Brad Eugene**                                        Case number *(if known)* **23-10855**

---

44. **Any business-related property you did not already list**

    ☑ No

    ☐ Yes. Give specific
    information .........

    _____    _____

    _____    _____

    _____    _____

    _____    _____

    _____    _____

45. **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached**
    **for Part 5. Write that number here** ........................................................................................... →    | $0.00 |

---

**Part 6:**  **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
             If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

    ☑ No. Go to Part 7.

    ☐ Yes. Go to line 47.

                                                                          **Current value of the**
                                                                          **portion you own?**
                                                                          Do not deduct secured
                                                                          claims or exemptions.

47. **Farm animals**
    *Examples:* Livestock, poultry, farm-raised fish

    ☑ No

    ☐ Yes ..........................    |                              |    _____

48. **Crops—either growing or harvested**

    ☑ No

    ☐ Yes. Give specific
    information. ............    |                              |    _____

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

    ☑ No

    ☐ Yes ..........................    |                              |    _____

50. **Farm and fishing supplies, chemicals, and feed**

    ☑ No

    ☐ Yes ..........................    |                              |    _____

51. **Any farm- and commercial fishing-related property you did not already list**

    ☑ No

    ☐ Yes. Give specific
    information. ............    |                              |    _____

---

Official Form 106A/B                    Schedule A/B: Property                    page 9

Debtor **Kountz, Brad Eugene**                                  Case number *(if known)* 23-10855

| | | |
|---|---|---|
| 52. | Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here ................................................. ➔ | $0.00 |

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |
|---|---|

53.  Do you have other property of any kind you did not already list?

*Examples:* Season tickets, country club membership

☑ No

☐ Yes. Give specific
information. ............

54.  Add the dollar value of all of your entries from Part 7. Write that number here ....................................... ➔     $0.00

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

| | | | |
|---|---|---|---|
| 55. | Part 1: Total real estate, line 2 ................................................................... ➔ | | $265,000.00 |
| 56. | Part 2: Total vehicles, line 5 | $39,409.00 | |
| 57. | Part 3: Total personal and household items, line 15 | $5,740.00 | |
| 58. | Part 4: Total financial assets, line 36 | $275.00 | |
| 59. | Part 5: Total business-related property, line 45 | $0.00 | |
| 60. | Part 6: Total farm- and fishing-related property, line 52 | $0.00 | |
| 61. | Part 7: Total other property not listed, line 54                     + | $0.00 | |
| 62. | Total personal property. Add lines 56 through 61. ............... | $45,424.00   Copy personal property total ➔ | +    $45,424.00 |
| 63. | Total of all property on Schedule A/B. Add line 55 + line 62. ......................................................................... | | $310,424.00 |